**Frederick G. DRUEDING et al.**

v.

**Gerard F. DEVLIN, President, Robert L. Moran and James S. Brady, Jr., individually and as members of the Board of Election Supervisors of Prince George's County, Maryland, et al.**

**Civ. No. 15835.**

United States District Court
D. Maryland.

Oct. 23, 1964.

---

Edward L. Genn, Silver Spring, Md., Allison W. Brown, Jr., Lawrence Speiser and Boren Chertkov, Washington, D. C., for plaintiffs.

Robert J. Woods, Upper Marlboro, Md., for Board of Election Supervisors of Prince George's County, Thomas B. Finan, Atty. Gen. of Maryland, and Robert F. Sweeney, Asst. Atty. Gen. of Maryland, Baltimore, Md., for the State of Maryland and others.

Before SOBELOFF, Circuit Judge, and THOMSEN and WINTER, District Judges.

THOMSEN, District Judge.

Plaintiffs, on behalf of themselves and others similarly situated, seek to have declared unconstitutional and to enjoin the enforcement, execution and administration of the provisions of Art. I, sec. 1, of the Constitution of Maryland [1] and the provisions of the statutes of that State [2] which have the effect of prohibiting a resident of the State from voting in elections for President and Vice-President of the United States unless he has resided in the State for one year, and in the county in which he offers to vote for six months. Plaintiffs do not attack the validity of those provisions insofar as they apply to elections other than those for President and Vice-President. Defendants have moved to dismiss the complaint for lack of jurisdiction and because it does not state a claim upon which relief can be granted.

---

1. "All elections shall be by ballot; and every citizen of the United States, of the age of twenty-one years, or upwards, who has been a resident of the State for one year, and of the Legislative District of Baltimore city, or of the county, in which he may offer to vote, for six months next preceding the election, shall be entitled to vote, in the ward or election district, in which he resides, at all elections hereafter to be held in this State; * * *."

2. Anno.Code of Md., 1957 ed., Art. 33, sec. 19: "(a) *Qualified voter.*—Only persons constitutionally qualified to vote in the precinct or district, as the case may be, shall be registered as qualified voters.

Plaintiffs are over the age of twenty-one years, citizens of the United States, and have been residents of Prince George's County, Maryland, since June 6, 1964, having moved there from Pennsylvania, where they previously resided. They desire to vote in the election for President and Vice-President of the United States to be held on November 3, 1964. Since they are no longer residents of Pennsylvania they are not eligible to vote there under the laws of that State. On September 12, 1964, plaintiffs sought to register in the precinct where they now reside. The registration officials refused to permit them to register to vote in the November 3, 1964 election, because they will not have lived in Maryland for one year or Prince George's County for six months at the time of that election.

The suit was filed against the Board of Election Supervisors of Prince George's County, who are appropriate defendants in such a case. The State, its Governor and its Secretary of State were granted leave to intervene as parties defendant.

This Court has jurisdiction of the controversy, which arises under sec. 1 of the Fourteenth Amendment to the Constitution of the United States. 28 U.S.C.A. § 1343.

Art. II, sec. 1 of the Constitution provides that the President and Vice-President of the United States shall be elected by electors chosen from each State, who shall be appointed "in such Manner as the Legislature thereof may direct." The various methods which have been used in the past for "appointing" electors are discussed in McPherson v. Blacker, 146 U.S. 1, 29–32, 13 S.Ct. 3, 36 L.Ed. 869 (1892); for many years all of the States have chosen electors by popular vote.

▮ Defendants refer to the statement in Reynolds v. Sims, 377 U.S. 533, 554–555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964), that "all qualified voters have a constitutionally protected right to vote." But that statement does not mean that the right to vote in a state or federal election is a right granted to all citizens by the United States Constitution. The several states may impose age, residence and other requirements, so long as such requirements do not discriminate against any class of citizens by reason of race, color or other invidious ground and are not so unreasonable as to violate the Equal Protection Clause of the Fourteenth Amendment.[3] Citizens of the United States residing in Puerto Rico and the Virgin Islands do not have the right to vote, and the Twenty-third Amendment was necessary to give residents of the District of Columbia the right to vote for electors for President and Vice-President.[4]

It is true, however, as we have noted, that the Equal Protection Clause of the

3. See Baker v. Carr, 369 U.S. 186, 207–209, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Reynolds v. Sims, 377 U.S. 533, 554–568, 84 S.Ct. 1362 (1964); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Davis v. Mann, 377 U.S. 678, 690–693, 84 S.Ct. 1441, 12 L.Ed. 2d 609 (1964); Lucas v. Forty-Fourth General Assembly of the State of Colorado, 377 U.S. 713, 734–739, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 51, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959).

4. See also the provisions of the Fifteenth and the Nineteenth Amendments. The age requirements of the several states are not entirely uniform; e. g. Georgia permits voting by persons eighteen years old. The Court of Appeals of Maryland has recently held that United States citizens residing on federal enclaves within the several states are not state residents for voting purposes and are not afforded the right to vote for President and Vice-President now sought by the plaintiffs. See Royer v. Board of Election Supervisors, 231 Md. 561, 191 A.2d 446 (1963), cert. den. 375 U.S. 921, 84 S.Ct. 267, 11 L.Ed.2d 165, and cases cited therein. See also 34 A.L.R.2d 1193.

Fourteenth Amendment prohibits a state from incorporating provisions in its election laws which unreasonably discriminate against any class of persons within its borders. The real question in this case is whether the provisions of the Maryland Constitution and statutes which require residence in the State for one year and in the county for six months before an otherwise qualified voter may vote in a presidential election are so unreasonable as to amount to a prohibited discrimination.

Insofar as those provisions apply to elections other than those to choose electors for President and Vice-President, they have been held reasonable and permissible by the Supreme Court of the United States. Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). In that case Mr. Justice Peckham, speaking for the Court, said:

> "The privilege to vote in any State is not given by the Federal Constitution, or by any of its amendments. It is not a privilege springing from citizenship of the United States. Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627. It may not be refused on account of race, color, or previous condition of servitude, but it does not follow from mere citizenship of the United States. In other words, the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution." 193 U.S. at 632, 24 S.Ct. at 575.

The Court noted, however:

> "In this case no question arises as to the right to vote for electors of President and Vice-President, and no decision is made thereon. The question whether the conditions prescribed by the state might be regarded by others as reasonable or unreasonable is not a Federal one.

> We do not wish to be understood, however, as intimating that the condition in this statute is unreasonable or in any way improper." 193 U.S. at 633, 24 S.Ct. at 576.

The Court of Appeals of Maryland has stated the purposes of the provisions in question in the instant case are (1) "identifying the voter, and as a protection against fraud;" and (2) to insure that the voter will "become in fact a member of the community, and as such have a common interest in all matters pertaining to its government." Shaeffer v. Gilbert, 73 Md. 66, 20 A. 434, 435 (1890); see also Howard v. Skinner, 87 Md. 556, 40 A. 379, 380–381, 40 L.R.A. 753 (1898); Hill v. Board of Registry, 171 Md. 653, 187 A. 869, 871 (1936); Shenton v. Abbott, 178 Md. 526, 15 A.2d 906, 908 (1940).

The judges of this Court, personally, are of the opinion that those objectives could probably be obtained by shorter residence requirements than those contained in the provisions of the Maryland Constitution and statutes now under attack, especially in view of the provisions of the Maryland election laws with respect to registration. See Anno.Code of Md., 1957 ed., Art. 33, sec. 29. But we cannot substitute our personal views for those of the Legislature and people of Maryland, unless there has been an unreasonable discrimination.

In the recent case of McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the Supreme Court said:

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within

their constitutional power despite the fact that, in practice, their laws result in some inequality."

Many other states have a one year residence requirement, and the Congress provided a one year residence requirement in legislation giving effect to the Twenty-third Amendment.

In Mabry v. Davis, W.D.Tex., 232 F. Supp. 930, 931 (1964), cited by plaintiffs, a three-judge court held that certain provisions of the Constitution and laws of Texas, insofar as they wholly deny the right to vote in Texas to members of the armed forces residing in that State after entering military service from other states, violate the Equal Protection Clause of the Fourteenth Amendment. However, the Court impliedly approved length of residence requirements similar to the Maryland requirements, saying:

"We believe, however, that present election laws in Texas, separate and apart from those under attack, provide sufficient safeguards to make it highly unlikely that the balance of voting power between the military and civilian in this state will be substantially altered by a removal of the ban against those who enter military service from another state. A qualified elector in Texas must be a resident of the state for one year and of the county for six months. * *

"But even if the present laws are not adequate to protect against the hazard of a military take-over at the polls, there is nothing to prevent the state from setting up more stringent conditions under which the right of suffrage may be exercised, so long as they are reasonable and do not discriminate between individuals. The vice in the state amendment is that it constitutes a *complete* abrogation of the right of plaintiffs to vote in Texas under *any* circum-

stances while they are in the military service." 232 F.Supp. at 936, 937.

See also Lassiter v. Northampton County Board of Elections, 360 U.S. 45, at 51, 79 S.Ct. 985 (1959).

Plaintiffs attempt to draw an analogy between the issue they present and the issues involved in the congressional redistricting cases, e. g., Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), and the legislative reapportionment cases, e. g. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362 (1964). We do not consider that those cases are similar to this case. And it may be noted that the Supreme Court declined to intervene in such cases until it was convinced that there was little hope that the several state legislatures would take remedial action.

In the area involved in the instant case, a number of the states have adopted constitutional or statutory provisions shortening their respective length of residence requirements for presidential elections. The National Conference of Commissioners on Uniform State Laws has prepared a draft statute to provide for such reductions, leaving the particular periods open for action by the several state legislatures.[5] As a result of this case the Attorney General of Maryland has recommended to the Legislative Council that the provisions in question be amended to shorten the length of residence requirements for voting for presidential electors.

■ The Court cannot say that the requirements of the Maryland Constitution and statutes in question here are so unreasonable that they amount to an irrational or unreasonable discrimination. The motion to dismiss must therefore be granted. Plaintiffs herein may take some comfort, however, in the fact that they have set in motion the procedures for what appears to be a desirable reform.

5. The history of the movement is set out in Handbook of the National Conference of Commissioners on Uniform State Laws, pp. 261–264 (1962). See also 77 Harv.L.Rev. 574 (1964).