**Richard HALL and Christine Hall, Plaintiffs,**

v.

**Harriet BEALS, Clerk and Recorder of El Paso County, and Bess Titus, Election Supervisor of El Paso County, Defendants.**

**Civ. A. No. C–1111.**

United States District Court
D. Colorado.
Nov. 29, 1968.

Quigley, Wilder, Helwig & Palermo, Richard V. Hall, Colorado Springs, Colo., for plaintiffs.

Robert L. Russel, Dist. Atty., by Bernard R. Baker and Carroll E. Multz, Deputy Dist. Attys., El Paso, County, Colorado Springs, Colo., John P. Moore, Deputy Atty. Gen., State of Colorado, for defendants.

Before HILL, Circuit Judge, KERR, Chief District Judge, and DOYLE, District Judge.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

Plaintiffs, on behalf of themselves and others similarly situated, seek to enjoin the enforcement, execution and admin-

istration of the provisions of Colorado Revised Statutes 1963, § 49–24–1.[1] This prohibits a resident of the State of Colorado from voting in elections for the President and Vice-President of the United States unless such resident has resided within the State of Colorado for a period of "not less than six months next preceding the election at which he offers to vote."[2]

The six months residency requirement for voting for the President and Vice-President of the United States is a recently enacted exception to the basic requirement of one year's residency for voting in all other elections in Colorado.[3] The plaintiffs seek to vote only for the President and Vice-President of the United States and, therefore, only § 49–24–1 of the Colorado Statutes is challenged in this case.

Plaintiffs are over the age of twenty-one years, citizens of the United States, and have been residents of El Paso County, Colorado, since June 15, 1968.[4] Plaintiffs moved to El Paso County from Contra Costa County, California, where they previously resided and had been registered to vote. In an effort to vote in the election for President and Vice-President of the United States on November 5, 1968, plaintiffs applied for absentee ballots from the State of California, but

they were advised by the Contra Costa County election officials that they would not be allowed to vote in California because they were no longer residents of the State of California. On or about August 1, 1968, the plaintiff, Richard Hall, went to the office of the County Clerk and Recorder for El Paso County and requested that he and his wife be allowed to vote there in the election for President and Vice-President of the United States. The registration officials informed the plaintiff that he and his wife would not be allowed to register to vote in the November 5, 1968 election, because of failure to satisfy the residence requirements of the State of Colorado.

Plaintiff then wrote to the Secretary of State of California stating that he would not be allowed to vote in Colorado and requesting that he and his wife be allowed to vote in California for President and Vice-President. On August 28, 1968, plaintiff was informed by letter from the Secretary of State of California that he and his wife would not be allowed to vote in California because they were no longer residents. Plaintiff then wrote to the Secretary of State of Colorado requesting that he and his wife be allowed to vote for President and Vice-President in Colorado despite the six-month residency requirement. On September 6, 1968, plaintiff was informed by the State

1. "Eligibility of new resident to vote— Any citizen of the United States who shall have attained the age of twenty-one years, shall have resided in this state not less than six months next preceding the election at which he offers to vote, in the county or city and county not less than ninety days, and in the precinct not less than fifteen days, and shall have been duly registered as required by the provisions of this article, shall have the right to vote as a new resident for presidential and vice-presidential electors."

2. Id.

3. "Basic qualifications—(1) (a) Every person who has attained the age of twenty-one years, possessing the following qualifications, shall be entitled

to register to vote at all general, primary, and special elections:
(b) He shall be a citizen of the United States;
(c) He shall have resided in this state one year immediately preceding the election at which he offers to vote, in the county ninety days, and in the precinct fifteen days * * *." 1963 C.R.S. § 49–3–1.

4. Plaintiffs have purchased a home at 1617 North Corona Street, Colorado Springs, El Paso County. They have registered their car with the Colorado Motor Vehicle Bureau and have obtained Colorado driver's licenses. Plaintiff, Richard Hall, is permanently employed with the law firm of Quigley, Wilder, Helwig & Palermo, Suite 602 Pikes Peak Building, Colorado Springs, Colorado.

Election Office that he and his wife would not be allowed to vote in the State of Colorado because they had not resided in Colorado for the required period of time.

The plaintiffs have exhausted their administrative remedies, and this Court has jurisdiction of the controversy, which arises under the Constitution and laws of the United States. 28 U.S.C. § 1343.

Art. II, Sec. 1 of the Constitution of the United States provides that the President and Vice-President of the United States shall be elected by electors chosen from each State, who shall be appointed "in such Manner as the Legislature thereof may direct." The various methods which have been used in the past for "appointing" electors are discussed in McPherson v. Blacker, 146 U.S. 1, 29–32, 13 S.Ct. 3, 36 L.Ed. 869 (1892); for

many years all of the States have chosen electors by popular votes.

■ It has long been settled law that the States have the power to prescribe reasonable and nondiscriminatory qualifications for voting in federal as well as state elections.[5] Therefore, Colorado has the unquestioned responsibility and duty to prescribe reasonable and nondiscriminatory qualifications for voting in the election for President and Vice-President of the United States. The plaintiffs attempt to draw an analogy between the issue they present and the issues involved in the congressional redistricting and legislative reapportionment cases, e. g., Reynolds v. Sims, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 12 L.Ed. 2d 506 (1964), and Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L. Ed.2d 45 (1968). However, we find, as

---

5. The right of suffrage is not a privilege and immunity of a citizen of the United States, but is a right conferred by the States. Minor v. Happersett, 21 Wall. 162, 177, 22 L.Ed. 627 (1875); Pope v. Williams, 193 U.S. 621, 632–633, 24 S.Ct. 573, 575, 48 L.Ed. 817 (1904). The Supreme Court in Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959), stated:

"The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised, absent of course the discrimination which the Constitution condemns. * * * So while the right of suffrage is established and guaranteed by the Constitution it is subject to the imposition of state standards which are not discriminatory and which do not contravene any restriction that Congress acting pursuant to its constitutional powers, has imposed. * * *

*      *      *      *      *

We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. *Residence requirements*, age, previous criminal record *are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters.*" 360 U.S. at 50–51, 79 S.Ct. at 989–990. (Emphasis added.)

(Citations within quote omitted.)
In Gray v. Sanders, 372 U.S. 368, 382, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), the Supreme Court made it clear that the states have the power to prescribe qualifications for voting in federal as well as state elections by its statement that

"[s]tates can within limits specify the qualifications of voters in both state and federal elections; the Constitution indeed makes voters' qualifications rest on state law even in federal elections. Art. I, § 2." 372 U.S. at 379, 83 S.Ct. at 808.

Although the Supreme Court in Carrington v. Rash, 380 U.S. 89, 91, 85 S.Ct. 775, 13 L.Ed.2d 675, held unconstitutional a provision of the Texas Constitution prohibiting any member of the Armed Forces of the United States who moves his home to Texas during the course of his military duty from ever voting in any election in that State so long as he or she is a member of the Armed Forces, it recognized the long standing principle that "Texas has unquestioned power to impose reasonable residence restrictions of the availability of the ballot." 380 U.S. at 91, 85 S.Ct. at 777.

See also Drueding v. Devlin, 234 F.Supp. 721 (D.Md.1964), aff'd per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079 (1966).

did the Three-Judge Court in Drueding v. Devlin, 234 F.Supp. 721, 725 (D.Md. 1964), that those cases are not analogous to the issues presented here.[6]

Since the State of Colorado has the authority and the responsibility to prescribe qualifications for voting in the election for President and Vice-President of the United States, the only real issue in this case is whether the Colorado Statute which requires residence in the State for six months before an otherwise qualified voter may vote is so unreasonable as to amount to a prohibited discrimination under the Equal Protection Clause of the Fourteenth Amendment.

The leading case on the reasonableness of state residency requirements is Drueding v. Devlin, 234 F.Supp. 721 (D.Md. 1964), aff'd per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965). In Drueding, a Three-Judge District Court was faced with the same question presented here. The plaintiffs there, as in the present case, were fully qualified except for satisfying the residency requirement. The statute required one year of residence within the state and six months within the county. The plaintiffs had moved to Maryland from Pennsylvania on June 6, 1964 and had sought to vote in the 1964 presidential election. In every sense, the facts in Drueding are parallel to the facts in this case.

■ The Court in Drueding noted that there are two purposes in such a statutory residency provision:

1. Identifying the voter and protecting against fraud.

2. Insuring that the voter will in fact become a member of the community, and as such have a common interest in all matters pertaining to its government. The fully reasoned opinion by Judge Thomsen expressed the personal opinions of the Judges that the objectives of the statute could probably be attained by a shorter residency requirement, but con-

cluded that the Court was not at liberty to substitute its personal views for those of the legislature in the absence of a showing of unreasonable discrimination. After carefully considering the applicable Supreme Court decisions, the Court concluded that the residency requirements were not so unreasonable as to amount to an irrational discrimination.

■ The Supreme Court of Colorado has stated that the purposes of residency requirements are:

1. To preserve the purity of elections. Mauff v. People, 52 Colo. 562, 123 P. 101 (1912).

2. To prevent the control of state affairs by persons who have no pecuniary interest in them. Merrill v. Shearston, 73 Colo. 230, 214 P. 540 (1923). While the purpose mentioned in Merrill has no application in this case since the plaintiffs want to vote only in the presidential election, the state's interest in preserving the purity of its elections is very much present. Some time limit must be set for determining who is and who is not a resident of Colorado for the purposes of voting, not only to preserve the purity of the election, but also for administrative reasons. In line with the personal opinions of the Judges in Drueding that the objectives of residency requirements could probably be attained in a period less than a year, Colorado has chosen to amend its Constitution and pursuant to that amendment the Colorado legislature has provided a time limit of six months for presidential elections. We are not at liberty to substitute our personal views of what time limit would accomplish the objectives of a residency requirement for the judgment of the Colorado legislature in the absence of a showing of unreasonable discrimination.

■ The Court in Drueding held that a one year residency requirement was not so unreasonable as to amount to an irrational discrimination, and it was af-

---

6. The Court in Drueding v. Devlin, supra, stated that
   "it may be noted, that the Supreme Court declined to intervene in such

cases until it was convinced that there was little hope that the several state legislatures would take remedial action." 234 F.Supp. at 725.

firmed *per curiam* by the Supreme Court. The Supreme Court in that case had a clear opportunity to accept the contention that lengthy residency requirements are unreasonable and to set forth guidelines as to what time period would be reasonable. This recent indication of the Supreme Court's viewpoint cannot be ignored. Accordingly, we hold that the *Drueding* decision is positive authority for dismissal of the complaint and for denial of relief.[7] The Clerk is therefore ordered to dismiss the complaint and to dismiss the cause of action.[8]

7. The Voting Rights Act of 1965 did not overrule *Drueding* since it is only applicable to invidious state action, such as discrimination based on race, color or creed. There was absolutely no evidence, nor was it even contended, that Colorado's six month residency requirement discriminates against a class of citizens by reason of race, color, creed, or other invidious ground.

8. The members of the Court recognize the unfairness and injustice in depriving the plaintiffs of their vote. However, we are powerless to remedy this since we must follow the law.