**Robert L. LESTER, Inez Lester, C. David Coeyman, Jr., and Elaine Coeyman, Plaintiffs,**

v.

**BOARD OF ELECTIONS FOR the DISTRICT OF COLUMBIA et al., Defendants.**

**Civ. A. No. 3130–70.**

United States District Court, District of Columbia.

Nov. 20, 1970.

Michael Valder, and John M. Bray, Washington, D. C., attorneys for plaintiffs.

John H. Suda, Asst. Corporation Counsel, Washington, D. C., for defendants.

Before LEVENTHAL, Circuit Judge, CORCORAN, District Judge, and SMITH, District Judge.

## OPINION AND ORDER

CORCORAN, District Judge.

### I.

The Election Law of the District of Columbia requires that a person have "resided in the District continuously since the beginning of the one-year period ending on the day of such election" in order to participate in all aspects of the electoral process. 1 D.C.Code § 1102 (2) (a) (1967 ed., as amended by Pub.L. No. 91–405, Sept. 22, 1970).

The plaintiffs have brought this suit as a class action[1] on behalf of themselves and "all other persons who reside or are domiciled in the District of Columbia and who satisfy all requirements for registration as voters in the District of Columbia except the one-year residence or domicile provisions" to challenge the constitutionality of the foregoing durational residency requirement.

The plaintiffs claim that the residency requirement creates an arbitrary classification which restricts the exercise of the fundamental right of franchise, without a showing of a compelling governmental interest, in violation of the Equal Protection Clause of the Fourteenth Amendment as it is made applicable to the District of Columbia through the Due Process clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

This three-judge Court was convened pursuant to the provisions of 28 U.S.C. 2282.[2]

The plaintiffs are two married couples who moved to the District of Columbia in June of 1970. The husbands are employed in the Office of Budget and Executive Management of the District of Columbia Government. Each couple has purchased a home in the District of Columbia and acquired District automobile registration and operators' permits. All plaintiffs are bona bide residents of the District intending to remain here indefinitely. They were refused permission to register to vote in the January 12, 1971 primary election and the March 1971 general election for nonvoting delegate to the House of Representatives on grounds that they will not have been residents of the District of Columbia for one year continuously prior to the election.

The District Court granted a temporary restraining order against the enforcement of the residency requirement and ordered the "provisional registration" of the plaintiffs and their class,[3] pending final determination of the constitutionality of the law by this three-judge Court.

The case was argued on plaintiffs' motion for summary judgment and defendants' motion to dismiss, agreed by the parties to be treated as cross motions for summary judgment.

### II.

The most recent legislative pronouncement as to residency requirements is set out in the Voting Rights Act Amendment of 1970[4] by which Congress established a uniform residency requirement of 30 days for voting in presidential elections. Congress expressly found that a durational residency requirement:

"(1) denies or abridges the inherent constitutional right of citizens to vote

---

1. Fed.R.Civ.P. 23, 28 U.S.C.A.

2. The question of whether Section 2282 applies to Acts of Congress pertaining solely to the District of Columbia was settled by the Supreme Court in Shapiro v. Thompson, 394 U.S. 618, 625, 89 S.Ct. 1322, 1326, 22 L.Ed.2d 600 (1969).

   "Section 2282 requires a three-judge court to hear a challenge to the constitutionality of 'any Act of Congress.' We see no reason to make an exception for Acts of Congress pertaining to the District of Columbia."

3. Since the Court's temporary order almost 4% of all registrants have been "provisional."

4. Pub.L. No. 91–285 (84 Stat. 314) 1970.

for their President and Vice President;

"(2) denies or abridges the inherent constitutional right of citizens to enjoy their free movement across State lines;

"(3) denies or abridges the privileges and immunities guaranteed to the citizens of each State under Article IV, section 2, clause 1, of the Constitution;

"(4) in some instances has the impermissible purpose or effect of denying citizens the right to vote for such officers because of the way they may vote;

"(5) has the effect of denying to citizens the equality of civil rights and due process and equal protection of the laws that are guaranteed to them under the fourteenth amendment; and

"(6) does not bear a reasonable relationship to any compelling State interest in the conduct of presidential elections."

These findings resting in part as they do on the "compelling state interest" test clearly reflect the current trend of the law. The defendants, however, rely on two decisions of the Supreme Court dealing with a durational residency requirement for voting. In Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904) the Supreme Court upheld a one-year residency requirement to vote in state elections; and in Drueding v. Devlin, 234 F.Supp. 721 (D.Md., 1964) aff'd per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965) the Court affirmed without opinion a three-judge district court's upholding the State of Maryland's one-year residency requirement to vote for presidential electors.

*Pope* was decided long before the more recent expansion of Equal Protection rights and its "application of the 'compelling interest' test to restrictions on the franchise." Hall v. Beals, 396 U.S. 45, 53 n. 1, 90 S.Ct. 200, 204, 24 L.Ed.2d 214 (1969) (Marshall, J. dissenting). *Drueding* using the "rational basis"

standard tested the statute's constitutionality by looking to whether the requirements were "so unreasonable that they amount to an irrational or unreasonable discrimination." 234 F.Supp. at 725. It is clear, however, that the rationale relied on by the courts in *Pope* and *Drueding* has been undermined by recent Supreme Court decisions. It would appear that the Supreme Court is no longer applying the "rational legislative basis" test but is now applying the stricter "compelling state interest" test. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

In *Shapiro* the Court in holding unconstitutional the durational residency requirement for welfare recipients applied the compelling governmental interest test as it relates to the right of interstate movement. Though the majority opinion implied "no view of the validity of waiting-period or residence requirements determining eligibility to vote," 394 U.S. at 638, 89 S.Ct. at 1333, Mr. Chief Justice Warren in dissent pointed out that:

"If a State would violate equal protection by denying welfare benefits to those who have recently moved interstate, then it would appear to follow that equal protection would also be denied by depriving those who have recently moved interstate of the fundamental right to vote." 394 U.S. at 654, 89 S.Ct. at 1343.

In both *Kramer* and *Cipriano* the Court applied the compelling state interest test to cases involving franchise rights.

" * * * if a challenged state statute grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the Court must determine whether the exclusions are necessary to promote a compelling state interest." Kramer v. Union Free School

**508**

District, *supra*, 395 U.S. at 627, 89 S.Ct. at 1890. Cipriano v. City of Houma, *supra*, 395 U.S. at 704, 89 S.Ct. 1897.

Only last term the Court again applied the compelling state interest test to franchise issues. Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).[5]

The issue of the constitutionality of a state's durational residency requirements has been argued before seven federal three-judge courts and one state court in the past five months. Burg v. Canniffe, 315 F.Supp. 380 (D.Mass.1970) appeal docketed, 39 U.S.L.W. 3168 (U.S. Oct. 12, 1970) (No. 811) (one-year residency requirement); Blumstein v. Ellington, (M.D.Tenn. September 11, 1970) appeal docketed, 39 U.S.L.W. 3150 (U.S. Oct. 6, 1970) (No. 769) (one-year residency requirement); Cocanower v. Marston, 318 F.Supp. 402 (D.Ariz.1970) appeal docketed, 39 U.S.L.W. 3151 (U.S. Oct. 13, 1970) (No. 799) (one-year residency requirement); Hadnott v. Amos, 320 F. Supp. 107 (M.D.Ala.1970) appeal docketed, 39 U.S.L.W. 3189 (U.S. Dec. 12, 1970) (No. 1139) (six month county and three months precinct residency requirements); Bufford v. Holton, 319 F.Supp. 843 (E.D.Va.1970) (one-year residency requirement); Piliavin v. Hoel, 320 F. Supp. 66 (W.D.Wis.1970) (six month residency requirement); Affeldt v. Whitcomb, 319 F.Supp. 69 (N.D.Ind. 1970) appeal docketed, 39 U.S.L.W. 3273 (U.S. Dec. 22, 1970) (No. 1081) (six month residency requirement); Keane v. Mihaly, 90 Cal.Rptr. 263 (Ct. of App. of Cal., 1970) (one-year residency requirement). With two exceptions, *Cocanower* and *Piliavin*, each court held the state's durational residency requirement uncon-

stitutional and based its decision on the compelling state interest doctrine.

██ The compelling state interest doctrine has two branches. Shapiro v. Thompson, *supra*, 394 U.S. at 659–669, 89 S.Ct. 1322 (Harlan, J. dissenting). The first branch requires that classifications based on "suspect" criteria be supported by a compelling state interest. The second branch requires that statutory classifications which affect a "fundamental right" be supported by the compelling state interest test. It is clear that voting questions fall under the second branch.

██ The right to exercise the franchise is one of the most fundamental of all rights granted to citizens. It "constitute[s] the foundation of our representative society." Kramer v. Union Free School District, *supra*, 395 U.S. at 626, 89 S.Ct. at 1889. Its importance, as the Supreme Court has pointed out, lies in the fact that it "is preservative of [all] other basic civil and political rights." Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). Any governmental action which limits, restricts, or denies the right to vote must meet the closest constitutional scrutiny. Evans v. Cornman, *supra*, 398 U.S. at 422–423, 90 S.Ct. 1752; Kramer v. Union Free School District, *supra*, 395 U.S. at 626, 89 S.Ct. 1886.

██ It is conceded that the District of Columbia may require that "all applicants for the vote actually fulfill the requirements of bona fide residence." Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 780, 13 L.Ed.2d 675 (1965). However, it is equally clear that "if they are in fact residents, with the intention of making (the District of Columbia) their home indefinitely, they, as all other qualified residents, have a right to an

5. In Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) the Supreme Court avoided a test of the durational residency requirements of the Colorado election laws on a finding of mootness. But Mr. Justice Marshall in a wide-ranging dissent, concurred in by Mr. Jus-

tice Brennan, took the occasion to note that in any decision to be made by popular vote a state "may exclude persons from the franchise only upon a showing of a compelling interest." Id. at 52, 90 S.Ct. at 203.

equal opportunity for political representation." Id. at 94, 85 S.Ct. at 779.

### III.

 Having concluded that the compelling governmental interest test is the standard which must be applied, the Court now determines whether the District of Columbia has shown the requisite compelling interest for a one-year durational residency requirement. The District argues that, as the seat of the national government a large portion of its population is transient, that this election is local in nature and a certain period of time is necessary for a voter to acquaint himself with local issues, problems and candidates, and that a one year period is not unreasonable. These arguments, however, are insufficient to deprive a citizen of his only chance to participate in the choosing of his governmental spokesman. The election is to choose a delegate to a national body where issues local to the District of Columbia are tied up with national issues. The delegate's responsibility, *inter alia*, is to participate in national affairs while representing the views of all the citizens of the District of Columbia. Thus this election is not local in the sense the school board election is local. The Court must take notice of the explosion in mass communication undreamed of fifty years ago. The District is serviced by three newspapers of outstanding quality, seven television stations and over forty radio stations. If prior elections are any guide, the communications media will, in the critical weeks of the campaign immediately prior to the election, review many times over the important issues and the varying attitudes of the candidates toward these issues.

Thus the Court concludes that there has been shown no compelling governmental interest in a durational residency requirement of one year, and accordingly strikes that requirement as violative of the Equal Protection clause of the Fourteenth Amendment. The Court's decision, however, does not touch the requirement prohibiting registration thirty days prior to the election. 1 D.C.Code § 1107(d) (1) (Supp. III, 1970). This period of time is necessary for administrative tidiness, to insure the purity of the vote and to prevent dual registration and dual voting. The interests of the Government are adequately protected by this provision.

Summary judgment for the plaintiffs is granted; summary judgment for the defendants is denied.

It is so ordered.