Barbara J. WOODSUM, individually, and Barbara J. Woodsum as representative of the class of similarly situated residents of the State of Florida

v.

James H. BOYD, Supervisor of Elections, Brevard County, Florida, et al.

No. 72–24 Orl. Civ.

United States District Court,
M. D. Florida,
Orlando Division.

April 19, 1972.

Ashmun Brown, c/o American Civil Liberties Union of Florida, Cocoa Beach, Fla., Jerome J. Bornstein, c/o American Civil Liberties Union of Florida, Orlando, Fla., Co-counsel for Woodsum, for plaintiffs.

Daniel Sears Dearing, Asst. Atty. Gen. State of Florida, Tallahassee, Fla., Clifton A. McClelland, Jr., Asst. County Atty., Brevard County, Fla., Titusville, Fla., for defendants.

Before SIMPSON, Circuit Judge, and YOUNG and KRENTZMAN, District Judges.

## MEMORANDUM OPINION

KRENTZMAN, District Judge:

This is an action for declaratory and injunctive relief brought pursuant to the provisions of 42 U.S.C. § 1983. The jurisdiction of this Court was invoked under 28 U.S.C. § 1343(3) and the Court has jurisdiction of this case. In her complaint filed February 3, 1972, on behalf of herself and all others similarly situated the plaintiff sought to have the durational residency requirements of Section 97.041 of the Florida Statutes, F.S.A. declared unconstitutional and to have the defendants enjoined from enforcing those requirements. Accordingly, a duly constituted 3-Judge District Court was convened in accordance with 28 U.S.C. § 2284.

Plaintiff's prayer for a temporary restraining order was heard on February 10, 1972. Counsel for the defendants appeared and waived the notice requirements of 28 U.S.C. § 2284 and the Court therefore construed the plaintiff's prayer as an application for preliminary injunction. Based upon the evidence and the argument presented at the February 10 hearing, and upon the further consideration of the Court, an order was entered on that date. In that order the Court held that the durational residency requirements of Florida Statutes, Section 97.041, F.S.A., of one year in the State and six months in the county where the voter desires to register, are unconstitutional under the equal protection clause of the Fourteenth Amendment. The defendants were enjoined from refusing the registration and permission to vote to any resident of the State of Florida based upon those durational residency requirements. Because of the stringent time requirements involved, a written opinion was not filed until this time:

## STATEMENT OF FACTS

The following facts have been stipulated.

The plaintiff, Barbara J. Woodsum, is a citizen of the United States and a former resident of New Jersey. On or about December 30, 1971, she moved to the State of Florida and Brevard County where she is presently employed as a computer programmer. The plaintiff is a bona fide resident of the state and intends to remain here permanently.

The plaintiff sought to register to vote in the March 14, 1972 presidential preference primary and subsequent elections, but was advised by the defendant county Election Supervisor, James H. Boyd, or others representing him, that she would not be permitted to register since she had not met the statutory requirement of Fla.Stat. § 97.041, F.S.A. that she be a resident of the State of Florida for one year and of Brevard County for six months.

The plaintiff was a registered voter in the State of New Jersey before moving to Florida. All of the facts before the Court indicate, and it is not disputed by the defendants, that except for Florida's statutory durational residency requirement, the plaintiff would otherwise be

duly qualified to register and vote in this state.

## CLASS ACTION

■ The Court holds that this action may be maintained by the plaintiff as a class action on behalf of persons similarly situated. The class consists of, and is limited to, those bona fide residents of the State of Florida who do not fulfill the durational residency requirements of Section 97.041 of the Florida Statutes, F.S.A. but who are otherwise qualified to register and vote in primary and general elections in the State of Florida. The prerequisites to a class action as prescribed by Rule 23(a) of the Federal Rules of Civil Procedure are found to be present and the action is maintainable as a class action under Rule 23(b) (2) and (3).

## ISSUES PRESENTED

The plaintiff complains that the durational residency requirements of Florida Statute § 97.041, F.S.A. and their enforcement by the defendants denies her equal protection of the laws in violation of the Fourteenth Amendment and unconstitutionally abridges her right to interstate travel. Because of its decision regarding the equal protection issue, the Court finds it unnecessary to consider plaintiff's contentions relating to interstate travel.

## DISCRIMINATORY CLASSIFICATION

■ The result of Florida's durational residency requirement is a discriminatory classification among bona fide residents of the state. Those residents who have lived in the state for a period of one year and in the county in which they wish to vote for a period of six months are allowed to register and vote in the state's primary and general elections. Bona fide residents who have not lived within the state for the requisite periods are not enfranchised in state and local elections.[1] The question which the Court must decide in determining if plaintiff and members of the class have been denied equal protection of the laws is whether the discriminatory classification is justified in terms of governmental purpose under the applicable standard of review.

## STANDARD OF REVIEW

The Court's determination of the yardstick by which this discriminatory classification is to be measured is essentially the resolution of the case itself. In cases testing the constitutional validity of a state statute on equal protection grounds, two standards have emerged.

### The Rational Relation Test

The older, more traditional standard is the "rational relation" test, sometimes called the "reasonableness" test. Under this standard, a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Such a discrimination will be held invalid "only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1960). The "rational relation" test also places the burden of proof upon the party contesting the validity of the statute by presuming that law's constitutionality. *Id.* A number of recent cases have adopted this test in resolving the validity of durational residency requirements for voting and generally those courts have held that the residency requirements were valid.[2]

---

1. These persons are, of course, allowed to vote in the election of the President and the Vice President of the United States by virtue of 42 U.S.C. § 1973aa–1(c).

2. See, Cocanower v. Marston, 318 F.Supp. 402 (D.Ariz.1970) ; Howe v. Brown, 319 F.Supp. 862 (N.D.Ohio 1970) ; Fitzpatrick v. Board of Election Comm., 39 L.W. 2356 (N.D.Ill.1970) ; Piliavin v. Hoel, 320 F.Supp. 66 (W.D.Wis.1970) ; Ferguson v. Williams, 330 F.Supp. 1012 (N.D.Miss. 1971) ; Fontham v. McKeithen, 336 F. Supp. 153 (E.D.La.1971). *But see,* Andrews v. Cody, 327 F.Supp. 793 (M.D.

Defendants contend that the proper standard of review of the state durational residency requirement is the rational relation test and that the statute should be upheld as valid under that standard.

In support of this contention the defendants rely primarily upon two cases beginning with Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). In that case the Supreme Court found constitutional a Maryland law which required newcomers into the state to register with the circuit court in the county in which they wished to vote a declaration that they intended to become citizens and residents of the state. After this declaration, the prospective voter waited a year before he could vote. Pope challenged the registration and declaration requirement, but did not specifically challenge the state's durational residency law (although the case is often cited as authority on the latter point).

The Court in *Pope* spoke of no specific "tests" which it had applied in reviewing the Maryland statute, but implicit in the Court's decision was the view that state laws under such circumstances would be upheld against a claim of denial of equal protection so long as there was no showing that the discrimination complained of was not rationally related to the promotion of a legitimate state interest.

In 1964 Maryland's durational residency requirement of one year in the state and six months in the county was challenged insofar as it applied to the elections of the President and the Vice President of the United States in the case of Drueding v. Devlin, 234 F.Supp.

721 (D.Md.1964). The 3-Judge District Court there held that the statute was constitutional, applying the rational relation test and relying heavily upon Pope v. Williams. Their decision was affirmed *per curiam* by the Supreme Court at Drueding v. Devlin, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965).

*The Compelling State Interest Test*

However, the validity of *Drueding* and *Pope, supra,* has been seriously challenged since Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583, was decided in 1969. In *Kramer* the Supreme Court held unconstitutional a section of the New York Education law which restricted the franchise in school district elections to persons who either owned or leased taxable realty in the district or had children in school. More importantly for the purposes of the instant action, the Court in *Kramer* applied the "compelling state interest" test as the proper standard for review.[3]

The compelling state interest test has been applied by the Supreme Court only where the subject matter of the discriminatory classification is in itself a fundamental and constitutionally protected right.[4] Accordingly, the Supreme Court in *Kramer* made the determination that the right to vote was a fundamental and constitutionally protected right:

"And, in this case, we must give the statute a close and exacting examination. 'Since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged

N.C.1971) which under the "reasonableness" or "rational relation" test, held a one year durational residency requirement invalid as it applied to local elections.

3. Supreme Court cases subsequent to *Kramer* which involved voter eligibility requirements have also applied the compelling state interest standard. These include: Cipriano v. Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Evans v. Cornman, 398 U.S. 419, 90 S.Ct.

1752, 26 L.Ed.2d 370 (1970); Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

4. E. g., the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); the right of procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); rights involving criminal procedure, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

infringement of the right of citizens to vote must be carefully and meticulously scrutinized.' Reynolds v. Sims, 377 U.S. 533, 562 [84 S.Ct. 1362, 1381, 12 L.Ed.2d 506] . . . This careful examination is necessary because statutes distributing the franchise constitute the foundation of our representative society. Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." 395 U.S. at 626, 89 S.Ct. at 1889.

The consequences that flow from the application of the compelling state interest standard are significant. It eliminates the presumption of constitutionality generally afforded statutes and classifications. Consequently, the burden of proof shifts from the plaintiff to the state. Instead of the plaintiff having to demonstrate that the classification is wholly irrelevant to the achievement of the state's objectives, the defendants must show that the classification is the necessary result of a compelling state interest.

Since the *Kramer* decision at least eight 3-Judge Courts have invalidated state durational residency requirements under the compelling state interest standard.[5] Five courts have upheld durational residency requirements under the rational relation test.[6] This Court, however, agrees with Judge Wisdom in his dissent in Fontham v. McKeithen, *supra* at note 2 that:

". . . none of the cases holding that the rational relation test should apply to durational residency requirements . . . provides any cogent rationale to support its conclusion that there are two classes of voter eligibility standards: those which must be examined by the compelling interest test under the Equal Protection Clause and those which need be tested only by the rational relation standard." 336 F.Supp. at 164.

Arguments that a "right to vote" is nowhere explicitly mentioned in the Constitution are of no moment. The right to interstate travel and the right of procreation are also not specifically mentioned in the Constitution. Nevertheless, all of these are fundamental and constitutionally protected rights and they may not be infringed upon or diminished by a state without a showing of a compelling state interest. Shapiro v. Thompson, Skinner v. Oklahoma ex rel. Williamson, *supra*, at note 4.

Similarly, an attempt to distinguish *Kramer* on the ground that it applied only to the "fencing out" of otherwise qualified voters is also incorrect. *Kramer's* discussion relating to the disintegration of the ordinary presumption of constitutionality of state statutes upon the application of the compelling interest standard makes it clear that the Supreme Court was attaching that standard to voter eligibility standards in general and not merely to the "fencing out" of otherwise qualified voters:

"The presumption of constitutionality and the approval given 'rational' classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality." 395 U.S. at 628, 89 S.Ct. at 1890.

---

5. *See*, Burg v. Canniffe, 315 F.Supp. 380 (D.Mass.1970); Affeldt v. Whitcomb, 319 F.Supp. 69 (N.D.Ind.1970); Lester v. Board of Elections for Dist. of Columbia, 319 F.Supp. 505 (D.D.C.1970); Bufford v. Holton, 319 F.Supp. 843 (E.D.Va. 1970); Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.1970); Keppel v. Donovan, 326 F.Supp. 15 (D.Minn.1970); Blumstein v. Ellington, 337 F.Supp. 323 (M.D. Tenn.1970). *See also* Beare v. Smith, 321 F.Supp. 1100 (S.D.Tex.1971).

6. Cases cited at Note 2, *supra*.

■ This Court finds persuasive the reasoning of the eight 3-Judge Court decisions previously mentioned [7] and the dissent of Mr. Justice Marshall in Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) that Pope v. Williams, *supra*, and Drueding v. Devlin, *supra*, are no longer good law. *Kramer, supra,* controls the case at bar. It dictates, and the Court holds that the proper standard of review for determining the constitutionality of the Florida durational residency requirement for voting is the compelling state interest test.

### JUSTIFICATION AND EVIDENCE PRESENTED

Once the compelling interest standard is determined to be the proper yardstick, it then becomes necessary to ascertain whether the defendants have submitted evidence sufficient to justify the discriminatory classification complained of.

The only evidence submitted by the defendants at the February 10 hearing was the testimony of the defendant James H. Boyd, Supervisor of Elections for Brevard County, Florida. Mr. Boyd's testimony was directed to the administrative procedures used in registering prospective voters and in supervising elections generally.

The evidence of administrative inconvenience or hardship presented by the defendants is insufficient under the compelling interest standard to justify the discriminatory classification of the durational residency requirement of one year in the state and six months in the county. The defendant Boyd testified that occasionally it takes longer than thirty days to process a registration of a prospective voter, but that under no circumstances does it take six months or a year. Florida Statutes § 98.051, F.S.A., provides that the registration books are to close 30 days prior to any election. Therefore, the Florida legislature has statutorily determined that the administrative burden of registering voters can be met by closing the books 30 days prior to the election.

■ That same 30 day period has been legislatively determined to be the period in which local elections offices should be able to determine that the prospective voter is a bona fide resident of the state. The testimony of Mr. Boyd indicates that, at least in his county, there is no actual "investigation" of whether a person is a bona fide resident at all. Mr. Boyd testified that once a registration is processed the voter's identification card is mailed to the address which has been supplied by the registrant. Only if the card is returned undelivered to the elections offices is any attempt ordinarily made to find the person or determine if the registrant is, in fact, a resident. Otherwise, the bona fides of a person's residency is determined simply by the oath of the prospective voter. Under these circumstances, the Court finds that the durational residency requirement is not justified by a compelling state interest in protecting against non-resident voting. It is just as easy for a non-resident to falsely swear that he or she has been a resident for the time period required by the statute as it would be to falsely swear that he or she is a resident at all.

■ Moreover, even if the state did conduct a more extensive inquiry into the residency of prospective voters, a conclusive presumption for administrative convenience that a resident of less than six months in the county and one year in the state is not a resident at all for voting purposes is an overbroad burden upon the right to vote. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Hall v. Beals (dissent of Justice Marshall), *supra.*

### CONCLUSION

Therefore, it is the judgment of the Court that the durational residency requirement of Florida Statutes § 97.041, F.S.A., of one year in the state and six

---

**7.** Cases cited at Note 5, *supra.*

months in the county in which the voter wishes to register is an unconstitutional limitation upon the right to vote in violation of the equal protection clause of the Fourteenth Amendment.[8]

GEORGE C. YOUNG, J., concurring specially.

GEORGE C. YOUNG (concurring specially):

When this case was heard by the Court on February 10, 1972, a ruling was announced from the bench that day at which time I announced my dissent to the decision reached by the majority. Thereafter, I prepared a written dissent which follows:

"I concur with the majority opinion that this is properly a class action and that the Court should not resort to the abstention doctrine for the purpose of declining to rule. However, I dissent from that portion of the opinion and decision of the majority wherein they find the Florida residence statute unconstitutional. I conceive my duty to be to rule on the facts in the light of the law as it exists and not as it should or perhaps soon may be.

In Pope v. Williams, 193 U.S. 621 [24 S.Ct. 573, 48 L.Ed. 817]. (1904), the Supreme Court of the United States held that a Maryland law requiring persons coming into the state to reside to make a declaration of intent to become citizens and residents of the state as a prerequisite to the right to be registered as voters was not violative of the federal constitution.

It is true that Pope v. Williams, supra, is a 1904 case and that the passage of time and changing conditions *may* alter its force as controlling law, but it is also true that it has not yet been overruled by the Supreme Court of the United States. The fact that there are approximately ten durational residence voting cases now pending

before the Supreme Court and that that Court has recently heard arguments on the subject, clearly demonstrates that this is an issue upon which the Court has not recently ruled. Therefore, until the Supreme Court rules otherwise, I conclude Pope v. Williams, supra, to be binding upon this Court.

The plaintiff and the majority of this Court rely upon the case of Kramer v. Union [Free] School District, 395 U.S. 621 [89 S.Ct. 1886, 23 L.Ed. 2d 583] (1969) as the basic authority for overturning the Florida statute. In that case the then Chief Justice Warren said:

"At the outset, it is important to note what is not at issue in this case. The requirements of § 2012 that school district voters must (1) be citizens of the United States, (2) be bona fide residents of the school district, and (3) be at least 21 years of age are not challenged. Appellant agrees that the States have the power to impose reasonable citizenship, age, and residency requirements on the availability of the ballot. Cf. Carrington v. Rash, 380 U. S. 89, 91, [85 S.Ct. 775, 777, 13 L. Ed.2d 675] (1965); Pope v. Williams, 193 U.S. 621 [24 S.Ct. 573, 48 L.Ed. 817] (1904). The sole issue in this case is whether the additional requirements of § 2012—requirements which prohibit some district residents who are otherwise qualified by age and citizenship from participating in district meetings and school board elections—violate the Fourteenth Amendment's command that no State shall deny persons equal protection of the laws."

As I read *Kramer*, the 'impelling interest test' is to be applied only to those requirements for voting in addition to the requirements of age, citi-

8. This opinion had been prepared for circulation among the members of the 3-Judge panel at the time the United States Supreme Court held unconstitutional Ten-

nessee's durational residency requirement for voting in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.

zenship and residence. If the 'impelling interest test' is to be extended, then it is for the Supreme Court and not for inferior courts to do so."

Subsequent to February 10, 1972, at which time I dissented for the foregoing reasons, the Supreme Court of the United States on March 21, 1972, decided Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274, in which the durational residence law of the State of Tennessee was held unconstitutional. Although the Chief Justice dissented, saying:

"The holding of the Court in Pope v. Williams . . . is as valid today as it was at the turn of the century.",

the decision of the majority of the Supreme Court is binding on this Court, and at this time I must concur that the decision of the majority is now the law.