**Marc David MANSON et al., Plaintiffs,**

v.

**George C. EDWARDS, Clerk for the City of Detroit, et al., Defendants.**

**Civ. A. No. 38325.**

United States District Court,
E. D. Michigan, S. D.

July 17, 1972.

Richard A. Soble, Goodman, Eden, Millender, Goodman & Bedrosian, Detroit, Mich., for plaintiffs.

Michael M. Glusac, Corp. Counsel, Robert Reese, Asst. Corp. Counsel, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

This is an action to declare unconstitutional a provision of the Detroit City Charter which provides that all candidates for the Common Council of the City of Detroit be at least 25 years of age.

Plaintiff Manson is a citizen of the United States, a resident of the City of Detroit, a registered voter and 21 years of age. Plaintiff Anstandig is a citizen of the United States, a resident of the City of Detroit, a registered voter and 18 years of age. Plaintiff Hansell is a citizen of the United States, a resident of the City of Detroit, a registered voter and 35 years of age. Plaintiff Levy is a citizen of the United States, a resident of the City of Detroit, a registered voter and 24 years of age. All of the plaintiffs desire to vote for Manson in the November 7, 1972, election to fill a vacancy on the Common Council of the City of Detroit.

Defendant City of Detroit is a Michigan municipal corporation. Defendant Common Council is the legislative department for the City and is charged with the responsibility of judging the election and qualification of its members, and defendant George C. Edwards is its City Clerk, charged with the responsibility of supervising elections.

Defendant Edwards refused to accept plaintiff Manson's nominating petition

and to place his name on the primary ballot.

Plaintiffs say that it is constitutionally impermissible discrimination to deny a citizen who is over 18 years of age elective office simply because he has not reached the age of 25 years.

And so the question as to whether the charter provision violates the equal protection clause of the fourteenth amendment is raised.

The United States Supreme Court has recently stated that whether "a law violates the Equal Protection Clause" involves an inquiry into three areas: (a) "the character of the classification in question; (b) the individual interests affected by the classification; and (c) the governmental interests asserted in support of the classification." Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). For the determination of these questions there are essentially two tests—a "rational basis" test and a "stricter standard," usually characterized as a "compelling interest" test. *Id.* See Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (April 24, 1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1970).

■ Traditionally, the test has been one of "reasonable necessity." E. g., McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed. 349 (1972). This test is particularly appropriate in "the area of economics and social welfare". Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). See also Jefferson v. Hackney, 405 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (May 30, 1972). Under this standard the state need only demonstrate "that a statutory classification bear some rational relationship to a legitimate state purpose. [citing cases]." Weber v. Aetna Casualty & Surety Co., *supra*, 406 U.S. 164 at 172, 92 S.Ct. 1400 at 1405.

■ The other test requires the state to show that the classification is "[necessary to promote] a *compelling* state interest." Shapiro v. Thompson, *supra*, 394 U.S. 618 at 638, 89 S.Ct. 1322 at 1331. (Emphasis in original.) Weber v. Aetna Casualty & Surety Co., *supra*; Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L. Ed.2d 370 (1970); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). "[A] heavy burden of justification is on the State [under this standard;] . . . the statute will be closely scrutinized in light of its asserted purposes." Dunn v. Blumstein, *supra*, 405 U.S. 330 at 343, 92 S.Ct. 995 at 1003.

The threshold question to be resolved in this case is the choice of the proper standard by which to measure the defendants' age restriction on candidacy. This selection virtually decides the case, for while the defendants may be able to demonstrate a "rational basis" for their age qualification, they have conceded their inability to present any "compelling governmental interest."

■ The compelling interest test is applied only where the governmental classification (1) is inherently suspect or (2) infringes on a fundamental right. Illustrative of the first category of cases are classifications based on wealth or race. E. g., Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Loving v. Virginia, 388 U. S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). This test is equally appropriate where the classification interferes with fundamental rights. E g., Shapiro v. Thompson, *supra* (travel); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1962) (religious belief). The right to vote is no less "a fundamental matter in a free and democratic society . . . . the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, [and] any alleged infringement of the right of citizens to vote must be carefully and

meticulously scrutinized." Reynolds v. Sims, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). The Supreme Court has been a zealous guardian of this fundamental right. "In decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. [citing cases]." Dunn v. Blumstein, supra, 405 U.S. 330 at 336, 92 S.Ct. 995 at 1000.

■■ Where the right to vote has been restricted by means of an inherently suspect classification—such as race or wealth—the Supreme Court has invariably subjected that classification to the compelling state interest test. Harper v. Virginia Board of Elections, supra; Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, supra; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1408 (1953).[1] Similarly, where a state impairs the right to vote by means of a classification which is not inherently suspect, e. g., residency, the Supreme Court "must determine whether the exclusions are necessary to promote a compelling state interest. [quoting with approval Kramer v. Union Free School District, supra, 395 U.S. 621 at 627, 89 S.Ct. 1886 at 1890] (Emphasis added.)" Dunn v. Blumstein, supra, 405 U.S. 330 at 337, 92 S.Ct. 995 at 1000. See also Williams v. Rhodes, supra; Evans v. Cornman, supra.

■ The right to vote is important in this case because the rejection of Manson's candidacy denies to the other plaintiffs, and Manson himself, the opportunity to vote for the candidate of their choice. This court is not impressed by the City's contention that the right to vote is not infringed since "no one will stop plaintiffs from casting a write-in ballot for Plaintiff Manson." The burden of write-in balloting should not lightly be imposed on a candidate and his supporters. More important, even if Manson received enough votes for election, he would be barred from assuming his office because of his age. In Williams v. Rhodes, supra (393 U.S. 23 at 30, 89 S.Ct. 5 at 10), the Court referred to the right of "qualified voters . . . to cast their votes effectively." (Emphasis added.) It is hardly an effective exercise of the franchise to cast a ballot for a person the government will forbid from taking office.

Despite the importance of the right to vote in this case, the fundamental allegation is unquestionably a denial of candidacy. It would be a mistake, however, to view these two issues as unrelated. The Supreme Court has stated that "the rights of voters and the rights of candidates do not lend themselves to neat separation." Bullock v. Carter, 405 U.S. 134 at 143, 92 S.Ct. 849 at 856, 31 L.Ed. 2d 92, (February 24, 1972). The Court noted further that the excessive filing fees (at issue in the case) "precluded [many] from seeking the nomination of their chosen party, no matter how qualified they might be and no matter how broad or enthusiastic their popular support." As a result, "voters [are] substantially limited in their choice of candidates." Id. (Emphasis added.) The Court found no "element of necessity . . . to justify the resulting incursion on the prerogatives of voters." Id.

---

1. The classification in this case is based on age. Since the equal protection clause doctrine is not static, it would be unwise to assert that age may never form the basis for an inherently suspect classification. At this point in time, however, it seems clear that age alone is not such a classification. Smith v. United States, 424 F.2d 267 (9th Cir. 1970); Perdido v. Immigration and Naturalization Serv-

ice, 420 F.2d 1179 (5th Cir. 1969). If there were no impairment of a fundamental right, the reasonable basis test would be appropriate.

Because the fundamental right to vote (including the opportunity to be a candidate) is also at issue here, the absence of an inherently suspect classification is not controlling.

405 U.S. at 149, 92 S.Ct. at 858 (Emphasis added.)

In Williams v. Rhodes, *supra*, the Court also found a state's limitation on candidacy to be an intrusion on the rights of voters. There, Ohio statutory filing requirements made it "virtually impossible for a new political party . . . to be placed on the state ballot to choose [presidential] electors." (393 U.S. 23 at 24, 89 S.Ct. 5 at 7). Mr. Justice Black stated:

". . . the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters . . . to cast their votes effectively.

". . . the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." 393 U.S. at pp. 30–31, 89 S.Ct. at p. 10.

In both *Bullock* and *Williams*, the fundamental issue was candidacy; would burdensome filing fees or filing requirements imposed by the state be allowed to keep the names of otherwise qualified candidates off the ballot? In both cases the state's impositions on candidacy were viewed as infringements on the right to vote. As a result the states were required to show a compelling governmental interest for their actions. Being unable to do so in either case, the restrictions were held to violate the equal protection clause of the Fourteenth Amendment. See also Human Rights Party v. City of Ann Arbor (Civil No. 37852) (E.D.Mich. March 17, 1972); Green v. McKeon, 335 F.Supp. 630 (E.D.Mich.1971); Mogk v. City of Detroit, 335 F.Supp. 698 (E.D.Mich. 1972) (three-judge panel); Woodsum v. Boyd, 341 F.Supp. 448 (M.D.Fla.1972) (three-judge panel); McKinney v. Kaminsky, 340 F.Supp. 289 (M.D.Ala. 1972); Stapleton v. Clerk for City of Inkster, 311 F.Supp. 1187 (E.D.Mich.

1970); Bolanowski v. Raich, 330 F. Supp. 724 (E.D.Mich.1971).

The facts are substantially similar in the case at bar. The governmental classification is clearly burdensome to both Manson and his supporters. Since a fundamental right is at stake the law must be closely scrutinized for a compelling governmental interest.

The quantum of proof required to demonstrate a compelling state interest will vary with particular fact situations. The Court in Dunn v. Blumstein, *supra*, offered some general guidelines:

"Statutes affecting constitutional rights must be drawn with 'precision,' [citing cases] and must be 'tailored' to serve their legitimate objectives. [citing cases]. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference." 405 U.S. 330 at p. 343, 92 S.Ct. 995 at p. 1003.

The state in *Dunn* offered two rationales for its one-year-and three-month voter residency requirement: (1) to insure purity of the ballot box and (2) to insure knowledgeable voters. Some of the Supreme Court's language in response to the "knowledgeable voter" argument is not inapposite to the issue of youthful candidacy.

". . . the durational residence requirements in this case founder because of their crudeness as a device for achieving the articulated state goal of assuring the knowledgeable exercise of the franchise . . . . [A]ny long-time resident [may] vote regardless of his knowledge of the issues—and obviously many long-time residents do not have any. On the other hand, the classifications bar from the franchise many other, admittedly new, residents who have become minimally, and often fully, informed about the issues . . . . There is simply nothing in the record to support the conclusive presumption that residents who have lived in the State

for less than [the required period of time] are uninformed about elections." 405 U.S. at pp. 357–358, 92 S.Ct. at p. 1011.

Similarly, the City of Detroit has made no showing that the knowledge or wisdom arguably necessary to fulfill the duties of Common Councilman are absent in all or most persons between the ages of 18 and 24. Moreover, there is no evidence that the requisite skills appear at the age of 25. The compelling interest test requires such a showing.

 Whether, as defendants argue, there is a rational basis for the City Charter age qualification is a question this court need not explore.[2] The test is compelling governmental interest and the defendant has not satisfied it.

 This court holds the provision of the Detroit City Charter which requires all candidates for the Common Council of the City of Detroit to be at least 25 years of age is unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment.

An appropriate order may be presented.

2. This court must reject the defendants' attempt to analogize to the Federal Constitution's age requirements for the President, Senators, and Representatives. The fact that these age qualifications are in the Constitution decides their constitutionality, but offers no support for an argument that a municipality has a compelling interest to impose similar standards.