Jim HINNANT, individually and as representative of the class of similarly situated residents of the State of Florida, Plaintiff,

v.

Jim SEBESTA, as Supervisor of Elections, Hillsborough County, Florida, and as one of like class, and the State of Florida, Defendants.

Joel Francis WOODMAN, individually, and Joel Francis Woodman, as representative of the class of similarly situated residents of the State of Florida, Plaintiff,

v.

James SEBESTA, Supervisor of Elections, Hillsborough County, Florida, et al., Defendants.

Civ. Nos. 72–440, 72–443.

United States District Court,
M. D. Florida,
Tampa Division.

Aug. 14, 1972.

Jim Hinnant, pro se.

Richard P. Condon, Tampa, Fla., Leslie Harold Levinson, Gainesville, Fla., amicus curiae.

Richard P. Condon, Tampa, Fla., for plaintiff Joel Francis Woodman.

Robert Shevin, Atty. Gen., State of Florida, Tallahassee, Fla., for State Defendants.

Michael J. O'Brien, Resident County Atty., Hillsborough County, Tampa, Fla., for defendant Jim Sebesta.

## MEMORANDUM OPINION

HODGES, District Judge.

On February 10, 1972, following argument of the case before a three-judge panel, my colleagues held in Woodsum v. Boyd, 341 F.Supp. 448 (M.D.Fla.1972), that the durational residency requirements of Florida Statute 97.041, F.S.A., (1971) were unconstitutional under the equal protection clause of the Fourteenth Amendment. At that time the Florida law specified a minimum residency of one year in the state and six months in the county as a prerequisite to registration as an elector. Relying primarily upon Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), the Court held that the "compelling state interest test" was applicable, and that the state had not justified its statutory residency requirements in satisfaction of that stringent standard.

Any doubt as to the correctness of the decision in *Woodsum* was shortly removed by the Supreme Court opinion of March 21, 1972, in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). See Judge Young's concurring opinion in *Woodsum*, 341 F.Supp. at 454–455. By its decision in *Blumstein* the Supreme Court invalidated Tennessee's voter residency requirement of one year ·in the state and three months in the county.

During this period the Florida Legislature was sitting in regular session, having convened on February 1, 1972; and in obvious response to *Woodsum* and *Blumstein*, it enacted Chapter 72–197, Laws of Florida (1972), amending Florida Statute 97.041, F.S.A. so as to require a durational residency of sixty days. The Act was signed by the Governor on April 12 and filed in the office of the Secretary of State on April 13, 1972.

The present election schedule in the state is as follows. A primary election (and general election for certain nonpartisan offices) will be conducted on September 12; a second primary or run-off election will be held on October 3; and the general election will be conducted on November 7. See Florida Statutes 100.031, 100.061 and 100.091, F.S.A. The registration period, insofar as the two primaries are concerned, ended on August 12, 1972, or 30 days prior to the date of the first primary election. Florida Statute 98.051(2), F.S.A. With regard to the general election, however, the books will remain open for registration until the thirtieth day preceding that election under the terms of the same statute, i. e., Section 98.051(2).

Having thus set the stage, attention can now be turned to the instant cases. The complaint of the plaintiff Hinnant was filed on August 2, 1972, and that of the plaintiff Woodman on the following day. Each was filed as a class action under 42 U.S.C.A. § 1983, and both attack the constitutionality of the sixty day durational residency requirement established by the recently enacted amendment of Florida Statute 97.041 (Chapter 72–197, Laws of Florida). On August 2, immediately after the filing of the first case, notice was dispatched to Chief Judge Brown of this Circuit together with a suggestion that a three-judge court be convened pursuant to 28 U.S.C.A. §§ 2281 and 2284. By letter dated August 4, received August 7, 1972, Judge Brown declined to constitute a three-judge court, saying: "I am of the view that there is no substantial Federal question any longer involved . . ." Cited in support of this decision was the *Blumstein* case and Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.1970), affirmed, 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971).

While Judge Brown did not expressly refer to Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), his refusal to convene a three-judge court must have been predicated upon the principle it established. In *Bailey* the Court held that despite the requirements of 28 U.S.C.A. § 2281, it is unnecessary to convene a three-judge court if, under prior decisions, the state statute being attacked is so palpably unconstitutional that any contention to the contrary would be frivolous.

Thus, upon receipt of Judge Brown's letter of August 4, this court promptly ordered the defendants to appear on August 11, 1972, and show cause why Florida Statute 97.041, F.S.A. as amended, should not be declared unconstitutional. The parties appeared, evidence was presented and argument was heard at that time.

Any questions concerning the jurisdiction of the court, the maintenance of these suits as class actions, and other kindred preliminary issues are clearly foreclosed by *Woodsum* and *Blumstein*, and no useful purpose would be served by any further discussion of those matters. Indeed, the same might also be said of the merits of the cases, particularly in view of Judge Brown's decision as noted earlier. Nevertheless, the arguments advanced by the State in support of the statute should at least be noted and briefly considered.

It is first contended that neither *Blumstein* nor any other decision dealing with the issue has yet struck down a durational residency requirement as short as sixty days. Secondly, it is urged that Florida is virtually unique among the states in that it attracts a huge number of part-time winter residents, tourists and other transients so that the likelihood of fraudulent registration is enhanced.

If the state actually closed its registration books sixty days prior to state and local elections and, in addition, could forcefully demonstrate that this period of time was necessary to verify the eligibility of electors and otherwise accomplish the many administrative tasks preparatory to conducting the election itself, then its argument in support of a sixty day period *might* have weight. But just as Tennessee did in *Blumstein*, Florida has elected to permit registration until thirty days before the election, and in so doing has already demonstrated that the thirty day period is sufficient for administrative preparation. See Woodsum v. Boyd, 341 F.Supp. at 453.

The argument that there is a greater potential for fraud in Florida is equally fallacious to the extent it suggests that the *length* of the residency requirement is a useful tool in suppressing improper registration. As the court said in *Blumstein*, "The nonresident intent on committing election fraud will as quickly and effectively swear that he has been a resident [for 60 days] as he would

swear that he was simply a resident." 405 U.S. at 346, 92 S.Ct. at 1005.

■ In short, there can be but one conclusion. The case is controlled by *Blumstein,* and the durational residency requirements of Florida Statute 97.041, F.S.A., as amended by Chapter 72–197, Laws of Florida, are hereby declared to be unconstitutional.

To avoid any confusion, however, it should be emphasized that this decision does *not* affect in any way the continuing right of the state to close its registration books thirty days before the election pursuant to Florida Statute 98.051, F.S.A., (which, in practical effect, results in a 30 day residency requirement). Neither does this decision affect in any way the right of the state to require an oath or affirmation that the registrant is a bona fide resident or domiciliary of the state and county at the time of registration. See Hadnott v. Amos, 320 F.Supp. 107 at 114 (M.D. Ala.1970), in which the Court equated residence and domicile for election law purposes, and defined the establishment of a domicile as including "the intent to reside either permanently or for an indefinite time in the future at the new residence." [1]

It is only the *durational* residency requirement in advance of closing the registration books that *Blumstein* condemns.

Having decided that the challenged statute is unconstitutional, attention must now be given to the remedy to be afforded the plaintiffs and members of their class. As noted earlier, the next election will be held September 12, and the registration books have already closed. If the books are ordered re-opened for the purpose of registering the members of plaintiffs' class, then the evidence before the Court is uncontradicted, and I so find, that such re-opening might well require a postponement of the election itself. [2]

Here again the answer lies in *Blumstein.* The District Court in that case was initially confronted with an identical problem, and it refused to re-open the books on the ground that such action would be "so obviously disruptive as to constitute an example of judicial improvidence." Blumstein v. Ellington, D. C., 337 F.Supp. 323 at 324–325. This too was approved by the Supreme Court on appeal, with the added observation that denial of such specific relief did not render the entire case moot. 405 U.S. at 333, footnote 2, 92 S.Ct 995, 31 L.Ed.2d 274.

■ So, in these cases, and for the same reason, I decline to order that the books be re-opened. The durational residency requirement of the statute is declared unconstitutional and its *future* enforcement is enjoined. The plaintiffs and members of their class will be able to register for the general election of November 7 at any time until the closing of the books thirty days beforehand.

---

1. It seems appropriate to note at this point that among the election law amendments passed by the legislature during its last session was a new (and wise) requirement that the registrant state under oath that he has never previously registered to vote in any jurisdiction, or if he has, that he execute a written request for cancellation of the existing registration. Chapter 72–63, Laws of Florida.

2. Another complication also comes to mind. How would the Supervisors of Elections distinguish between those new residents who are members of plaintiffs' class and those older residents who could have registered earlier and have no right to do so now? An additional oath would be the only available device.