292 So.2d 7 (1974)
Willie James REED, Appellant,
v.
STATE of Florida, Appellee.
No. 43250.
Supreme Court of Florida.
February 13, 1974.
Rehearing Denied April 15, 1974.
*8 Phillip A. Hubbart, Public Defender, and Bennett H. Brummer, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
This is a direct appeal from the former Criminal Court of Record of Dade County, Florida, which held that Fla. Stat. Ch. 40, F.S.A. (Jury Selection) is constitutional, the cause having been transferred by order of the District Court of Appeal, Third District, pursuant to Rule 2.1, subd. a(5)(d), 32 F.S.A. We have jurisdiction. Fla. Const., art. V, § 3(b)(1), F.S.A.
Appellant Reed (hereinafter referred to as defendant) was charged by information with robbery. Upon arraignment, defendant was adjudged insolvent, the public defender was appointed to represent him, and he entered a plea of not guilty. Defendant filed a pre-trial motion to dismiss the information or, in the alternative, to exclude the entire jury panel on the following grounds:
1. That Reed's Sixth and Fourteenth Amendment rights were violated in that he was being denied a trial by a jury selected from a fair cross-section of the community;
2. That the petit jurors were not impaneled by a random impartial method of selection in that certain categories of professions (e.g., doctors, teachers) are established to insure selection from specific occupations while other classes of individuals (e.g., store clerks, carpenters) are not so classified;
3. That Fla. Stat. § 40.01, F.S.A., is unconstitutional on its face in that it sets forth a residency requirement for prospective jurors in violation of the Fifth and Sixth Amendments as incorporated in the Fourteenth Amendment of the United States Constitution and the Florida Constitution;
4. That the method used to select jurors excludes other cognizable classes of persons well-suited for jury service.
The trial court denied the motion to exclude the jury panel, but permitted a subsequent hearing for the purpose of taking further testimony. Trial commenced and *9 concluded with a jury verdict of guilty. Thereafter, in accordance with the ruling of the Court, a subsequent hearing was held and, by stipulation of counsel, the testimony of jury commissioners, deputy clerks of the circuit court, and the supervisor of elections became part of the record.
After this hearing, the trial court declared that Fla. Stat., Ch. 40, F.S.A., was constitutional. The defendant filed a notice of appeal with the District Court of Appeal, and that Court ordered the cause transferred here in that the validity of the State statute was passed upon by the trial court.
Fla. Stat. § 40.01, F.S.A., provides regulation of the process of jury selection which is not, per se, violative of any provision of the Constitution of Florida or of the United States. Nor has the selection of jurors in Dade County created any constitutional infirmity.
Fla. Stat. § 40.01, F.S.A., provides the following general requirements for grand and petit jurors:
1. Male and female persons over the age of twenty-one years;
2. Citizens of the State who have resided in this State for one year and in their respective counties for six months;
3. Fully qualified electors of their respective counties.
Requirement three  qualification as an elector in the county  has been greatly altered as to residence requirements by case law and as to age requirements by the adoption of U.S.Const., Amend. XXVI, and legislative action. The first and second requirements mirrored similar tests for voter registration before the recent registration requirement alterations.
As to the issue of age, this Court opined a few short months ago:
"The Twenty-Sixth Amendment to the United States Constitution provides that the right of citizens eighteen years of age or over to vote shall not be denied or abridged by the United States or by any state on account of age. This amendment has no bearing on eligibility of persons for jury service." State v. Silva, 259 So.2d 153, 161 (Fla. 1972).
As was carefully and extensively set forth in State v. Silva, supra, the tests for voting eligibility and jury duty eligibility are not necessarily identical, and it is within the control of the Legislature to determine juror qualifications in the absence of any constitutional mandate. We are not confronted with the 1973 Act of the Legislature [Ch. 73-21, Laws of Florida] granting adult rights to 18-year-old citizens. Under this law, the 18-year-old citizen is now eligible for jury service.
The right of the State to determine the quality of juries in the State courts has always been recognized by the United States Supreme Court. In Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1952), the Supreme Court considered a North Carolina statute which provided that the selection of jurors should be on the basis of property tax lists. In upholding the statute, the Supreme Court said:
"States should decide for themselves the quality of their juries as best fits their situation so long as the classifications have relation to the efficiency of the jurors and are equally administered.
"Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty. Short of an annual census or required population registration, these tax lists offer the most comprehensive source of available names. We do not think a use, nondiscriminatory as to race, of the tax lists violates the Fourteenth Amendment, nor can we conclude on the evidence adduced that the results *10 of the use require a conclusion of uncon stitutionality." (344 U.S. pp. 473, 474, 73 S.Ct. p. 416, 97 L.Ed. pp. 497-498)
A similar pronouncement was made in Carter v. Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), where the Court upheld an Alabama statute governing jury selection by commissioners. The Supreme Court in its opinion said:
"It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character. `Our duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.'
"... Nearly every State requires that its jurors be citizens of the United States, residents of the locality, of a specified minimum age, and able to understand English. Many of the States require that jurors be of `good character' or the like; some, that they be `intelligent' or `well informed.'" (396 U.S. pp. 332, 333, 90 S.Ct. p. 525, 24 L.Ed.2d pp. 559-560)
Under these decisions, the Legislature has the right to prescribe that the selection of jurors shall be from the list of registered voters and be composed also of citizens who have resided in the State for one year and in their respective counties for six months. These classifications have relation to the efficiency of the jurors and expedite the administration of the selection procedure. In other words, the residents of a particular locality or a particular state for a certain period of time are more apt to consider evidence in the light of surrounding circumstances and, certainly, jury lists could be properly prepared and service obtained on prospective jurors with more efficiency and less cost.
Applying the proper tests of constitutional review, in State v. Silva, supra, we held that Fla. Stat. § 40.01, F.S.A., is constitutional. Nothing relating to jury selection has occurred that requires a reversal of that view.
As to the specific issues raised about the application of Fla. Stat. § 40.01, F.S.A., in Dade County, the retention of separate filings for professional persons, governmental employees, and persons over the age of sixty-five years, after these groupings have lost their validity as factors in jury selection, represents a lack of efficiency, but does not represent a constitutional error. Such separate groupings should be abandoned, but there has been no showing that the intent or result of such groupings has been the establishment of a set ratio of members of these classes in the jury selection process. As such, the situation is easily distinguishable from the situation in State v. Silva, supra, where racial ratios were carefully prepared and maintained. Nor has there been any showing of prejudice or injury to appellant by these processes.
The delay in preparation of voter cards by the Dade County Supervisor of Elections has, indeed, stalled the inclusion of perhaps thousands of prospective jurors from the jury lists. However, there was no showing that the jurors thus excluded by the burden of preparation for a national election has in any way altered the makeup of the jury lists.
Thus, none of the alleged errors in the Dade County system of jury selection has resulted in the
"[S]ystematic and intentional exclusion of any economic, social, religious, racial, political, or geographical group." State v. Silva, 259 So.2d 153, 163 (Fla. 1972).
*11 It is this "systematic and intentional" action on the part of a Jury Commission which creates a violation of constitutional safeguards, as we found in the Silva case. There is no evidence of such action in the case sub judice.
Accordingly, the judgment of the trial court is affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, McCAIN and DEKLE, JJ., concur.
ERVIN, J., dissents with opinion, in which BOYD, J., concurs.
ERVIN, Justice (dissenting):
In addition to a not guilty plea in the trial court appellant filed a timely pretrial motion seeking to dismiss the information, or in the alternative, to exclude the entire jury panel subject to the stipulation that certain testimony become part of the record. Appellant's motion, presented here in summary form, contained the following allegations: (1) That insofar as the Sixth and Fourteenth Amendments guarantee that an accused be tried by an impartial jury of his peers, and that he shall not be deprived of due process or equal protection of the laws, F.S. Section 40.01(1), F.S.A., is unconstitutional in that it provides that both grand and petit jurors shall be drawn from among citizens of the state over twenty-one years of age who have resided herein for one year and in their respective counties for six months; (2) that since members of the eighteen to twenty-one-year-old age group are not allowed to serve as jurors, the jury list did not represent an appropriate cross-section of the community in which he was being tried, and (3) that the jurors in Dade County, Florida, are not empanelled by a random, impartial method of selection in that lists of names of certain qualified persons are being filed for selection according to specific categories.
The trial judge denied the motion to exclude the jury panel, but permitted a subsequent hearing for the purpose of gathering testimony relating to validity of the selection of the jury panel. Appellant was then tried and a jury rendered a verdict of guilty, whereupon Reed was sentenced to a life term in the state prison.
On May 25, 1972, two days following return of the jury verdict, a hearing was held and by stipulation of counsel the testimony of Joseph D'Apice, a jury commissioner; Ann H. Bobo and Margaret Haase, Deputy Clerks of the Circuit Court in and for Dade County, and Willard J. Miller, Supervisor of Elections of Dade County, was entered into evidence and made a part of the record. Their testimony, which was excerpted from a previous trial in the Dade County Criminal Court of Record, was taken at various times prior to May 25, 1972. However, the State Attorney stipulated to the truth and accuracy of their statements and further stipulated that no changes had occurred in the jury selection process between the dates covered by their testimony and those involved in the trial of Appellant Reed. It was also stipulated that although Dolores Turner (another jury commissioner) may have joined in the selection of the jury that sat during Appellant's trial, the method of selection which she employed was exactly like that described by Joseph D'Apice.
During the course of the hearing the trial court expressed familiarity with all of the testimony presented and ruled that F.S. Chapter 40, F.S.A., was constitutional. It also denied Appellant's motion seeking to exclude the jury panel. Since the trial court did not comment upon any of the testimony in making its ruling, we are setting out below a synopsis of what was submitted at the hearing as stipulated evidence.
Willard J. Miller's uncontradicted testimony reveals that in his capacity as Supervisor of Elections of Dade County he gathered the names of registered voters within Dade County and delivered them to the Jury Commission for use in selecting petit jurors. He indicated that prior to a recent court order it was necessary for a person *12 to have lived in Florida for one year and in Dade County for the last six months in order to be a registered voter within the state. Due to a time lag wrought by the 1972 election and the newly enfranchised eighteen-year-old registrants, his office was running approximately two months behind in processing newly registered voters. Consequently, there were "thousands" of voter registration cards that had not been sent to the Jury Commission since 1971.
Ann H. Bobo and Margaret Haase performed similar duties in fulfilling their offices of Deputy Clerks of the Dade County Circuit Court. Their uncontradicted testimony indicates that the voter registration cards used by the Jury Commissioner in selecting veniremen originate in the voter registration office. Upon delivery to the Clerk's office they are placed in one of seventeen or eighteen different filing cabinets according to the following categories:
1. Persons who were unscreened and had never served.
2. Persons over age sixty-five.
3. Professional persons (e.g., doctors, nurses, teachers) and government employees (e.g., policemen, firemen, and customs inspectors).
4. Persons who have served as jurors during the last three years.
The names of attorneys were filed in a separate cabinet and were not selected for jury service (see F.S. Section 40.08, F.S.A.).
The reason given for the separate classification of certain professional and governmental groups was that at one time such groups were exempt from jury service and that although they were not presently exempt from serving as jurors, these groups had not yet been included with all prospective jurors in a general file. It was on this point that the testimony of Mrs. Haase and Mrs. Bobo presents some contradiction. Although both agreed that these separate classifications existed, Mrs. Bobo testified that the names from the professional grouping were being commingled into one category. Mrs. Haase indicated that the separate classifications were being maintained.
Jury Commissioner Joseph D'Apice's uncontradicted testimony reveals that he selected 5,000 veniremen "on a random basis" from a total of 525,000 names contained on the cards placed in the category files in the office of the Clerk of the Dade County Court. Each card contained the name, address, race, sex, political affiliation and occupation of the prospective venireman. The procedure he employed in making a selection was to draw every fifteenth or twentieth card from a category file without looking at any of the information contained on the cards. After rotating through the alphabet in this fashion, his task was complete once 5,000 names were drawn.
Appellant has submitted two questions for this Court's consideration: (1) Whether F.S. Section 40.01, F.S.A., is unconstitutional in that it provides both grand and petit jurors shall be selected from among citizens of the state over twenty-one years of age who have resided herein for one year and in their respective counties for six months. (2) Whether the petit jurors selected for service in Dade County are being empanelled by means of a system that does not allow for a random selection of veniremen and thereby violates the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 16 of the Florida Constitution.
Appellant contends that the residency requirements of F.S. Chapter 40, F.S.A., are violative of his rights to equal protection of the laws, due process of law, and the right to be tried by an impartial jury selected from a cross-section of the community, under the Sixth and Fourteenth Amendments to the United States Constitution and the Declaration of Rights of the Florida Constitution. The applicable section provides as follows:
"(1) Grand and petit jurors shall be taken from the male and female persons *13 over the age of twenty-one years, who are citizens of this state and who have resided in this state for one year and in their respective counties for six months and who are fully qualified electors of their respective counties; provided, however, that expectant mothers and mothers with children under eighteen years of age, upon their request, shall be exempted from grand and petit jury duty." F.S. Section 40.01(1), F.S.A.
As authority for his position, Appellant cites recent Federal decisions that have struck down county and state voter residency requirements. See Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Hinnant v. Sebesta, 346 F. Supp. 913 (M.D.Fla. 1972); Woodsum v. Boyd, 341 F. Supp. 448 (M.D.Fla. 1972). A United States District Court in Woodsum struck down the durational residence requirements of F.S. Section 97.041, F.S.A., which required Florida citizens to have a minimum residency of one year in the state and six months in the county as a prerequisite to registration as electors. A single-judge Federal court in Hinnant then declared unconstitutional the sixty-days residence requirement provided in Chapter 72-197, Laws of Florida 1972, amending F.S. Section 97.041, F.S.A.
To be constitutional today the jury selection process must conform to current voter registration and age requirements. F.S. Section 40.01(1), F.S.A., must yield to the latest voter registration requirements of the legislative and judicial branches of government, state or national, relating to age and residency.
Attainment of legal majority or the age when one has attained peer status as a juryman must be the same as that when a citizen has reached the age entitling him to vote in national presidential elections.
Our Federal and State constitutions mandate a jury selection system completely free of citizen discrimination, whether the same springs from voters' age or residency requirements, political beliefs, economic or occupational status, race, or other improper bases.
Insofar as general and abstract standards require that jurors be "law abiding citizens of approved integrity, good character, sound judgment and intelligence, etc.," (see F.S. Section 40.01(3), F.S.A.) are concerned, the same are in conflict with modern decisions requiring random selection of jurors from a cross-section of the community. Such abstract standards are subtle predicates for establishing procedures either directly or covertly designed to effect discriminatory selection of jurors. Usually such procedures take the form of authorizing jury selection officials to make personal judgments based on slanted questionnaires or their own personal predilections as to the suitability of particular citizens for jury service. Such practices are the antithesis of random jury selection from a cross-section of the community.
It is not presumed to suggest that certain specific standards cannot be statutorily prescribed relating to eligibility for jury service, e.g., those excluding convicted felons or persons otherwise lacking civil rights, or those without citizen status; those who are insane or senile and others who from some compelling state interest may be excluded. See F.S. Section 40.01(2) and Section 40.07, F.S.A. What is meant is that the general statutory standards before mentioned have no place in modern constitutional standards broadening the base for jury service.
Appellant contends that the method employed in Dade County to select veniremen for petit juries violated his right to be tried by a jury of his peers selected at random from a cross-section of the community.
In Silva v. State, Fla., 259 So.2d 153, we were also concerned with the manner in which jury panels were selected and constituted in Dade County. In that case the trial court found as a fact that the jury commissioners then in office employed a quota system to either exclude or include a *14 certain fixed percentage of qualified black citizens in connection with the selection of jury lists in Dade County. We held in Silva that such a system violated due process and equal protection guarantees and the right of an accused to a speedy and public trial by an impartial jury under the Sixth Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment. We stated:
"[7-9] The tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, however, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community, for such complete representation would frequently be impossible. But it does mean that prospective jurors must be selected at random by the proper selecting officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. See Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1945). Selections from classes or groups on a proportion basis guarantees representation, but at the same time places a limitation on the number from each class or group. This is forbidden." State v. Silva, supra, at 160.
In Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1945), the United States Supreme Court held that a federal jury panel from which persons who worked for a daily wage were intentionally and systematically excluded was unlawfully constituted:
"Were we to sanction an exclusion of this nature we would encourage whatever desires those responsible for the selection of jury panels may have to discriminate against persons of low economic and social status. We would breathe life into any latent tendencies to establish the jury as the instrument of the economically and socially privileged. That we refuse to do." Id. at 223-224, 66 S.Ct. at 987.
The selection procedures presently under review involve the drawing of veniremen from three exclusive groups of persons: those holding certain professional and governmental occupations; those who are over age sixty-five, and those persons who have served on juries during the last three years. The undisputed testimony of the jury commissioner reveals that he draws every fifteenth or twentieth name from each of these categories. This procedure insures that the array selected will include persons with certain specific occupations (e.g., doctors, nurses, teachers, etc.) and also persons over the age of sixty-five. This is not a random selection "done without any settled aim, purpose or direction." Words and Phrases, "random", Vol. 36, p. 98. Cf. Ballentine's Law Dictionary, 3d Ed., "at random".
The result of such a selection procedure is a systematic proportional inclusion of certain professional and age groups and, by necessity, the corresponding exclusion of other persons in occupations of lower economic and social status. Also, the procedures directly affect the appearance on the jury of persons within certain age groups who are equally suited for jury service and no less the peers of a defendant than those persons within the selected occupational and age groups. The Dade County Jury Commissioners were undoubtedly acting in mistaken good faith in insuring that well-educated and experienced veniremen were selected along with those from less advantageous backgrounds. However, it is important to recognize that defendants and those constitutionally eligible for jury service are to be found in every stratum of society. As was stated in Thiel v. Southern Pacific Co., supra:
"Jury competence is an individual rather than a group or class matter. That fact *15 lies at the very heart of the jury system. To disregard it is to open the door to class distinctions ... which are abhorrent to the democratic ideals of trial by jury." Id. at 220, 66 S.Ct. at 986.
We should not sanction a jury selection system that is manipulated so as to insure representation from certain social, economic and age groups.
It is noted that had Dade County employed the electronic data processing equipment as was suggested in Silva v. State, supra, 259 So.2d at 160, 161, the problem which Appellant has brought to this Court for review would probably never have occurred. At least six other counties of lesser size presently use such equipment in selecting veniremen. See Report of Judicial Council of Florida (17th Report, 1972), p. 32. It is again recommended that Dade County jury selecting officers consider making use of such equipment to aid in the assurance of a completely random selection of jury lists. Where such a system is used there would appear to be no need to store information relating to race, political affiliation and occupation of the prospective veniremen as is presently contained on the voter registration cards. It is not suggested that all such information is used to select Dade County veniremen under the present system; it is only intended to point out that those classifications present entirely superfluous information when undertaking the drawing of a jury panel and perhaps the temptation to make improper use of it.
The restriction of jury selection to Dade County voter registration lists is a further deviation from random selection. Many citizens of the County do not register to vote; many who were once registered have had their names "purged" from the lists pursuant to law. A reasonable effort should be made to extend the County's lists to also include as many of the unregistered citizens of the County as possible.
Random selection means opening the selection process to all the County's citizens and not to select groups having voter, occupational or a particular age status.
Appellant Reed's jury panel does not meet Federal and Florida constitutional guarantees and it was error for the trial judge to deny the motion to exclude the jury panel. The judgment below should be quashed and the cause remanded for a new trial by a jury drawn from a panel properly and fairly chosen.
BOYD, J., concurs.